IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HATCH VALLEY HOME HEALTH,**
INC. a New Mexico Corporation, and
**ANTOINETTE L. TURNER,**
**individually**,

      Plaintiffs,

      vs.                          No. Civ. **04-745 MCA/LCS**

**THE SECRETARY OF THE UNITED STATES**
**DEPT. OF HEALTH & HUMAN SERVICES;**
**BLUE CROSS & BLUE SHIELD OF NEW MEXICO,**
a Member of the Blue Cross and Blue Shield Association,
Intermediary; and **PALMETTO GBA,** a wholly owned
subsidiary of Blue Cross and Blue Shield of South
Carolina, a Member of the Blue Cross and Blue Shield
Association, Secessor Intermediary,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs Hatch Valley Home Health, Inc. and Antoinette L. Turner's *Motion to Amend Complaint* [Doc. 21] filed February 14, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

## I. BACKGROUND

On July 1, 2004, Hatch Valley Home Health, Inc. (HVHH, Inc.) and Antoinette L. Turner, identified in the *Complaint* as HVHH, Inc.'s President and statutory agent, brought suit against the Secretary of the United States Department of Health and Human Services,

Blue Cross & Blue Shield of New Mexico (BCBS-NM), and BCBS-NM's successor, Palmetto GBA (Palmetto) under the Social Security Act, 42 U.S.C. § 1395oo(f). [Doc. 1]. Section 1395oo(f)[1] allows for aggrieved Medicare providers such as HVHH, Inc. to seek judicial review of decisions rendered by the Medicare Provider Reimbursement Review Board by commencing a civil action. See 42 U.S.C. § 1395oo(f). The *Complaint* in this case is signed twice, once by Turner individually and once by Turner for HVHH, Inc. Below the signatures appears "Antoinette L. Turner, pro se," followed by Turner's address and telephone number. [See Doc. 1 at 5].

In their *Complaint*, HVHH, Inc. and Turner allege that BCBS-NM, a fiscal intermediary under the Medicare Act, erred by designating HVHH, Inc. a rural provider. This mistake caused BCBS-NM to overpay HVHH, Inc. Upon realizing the error, BCBS-NM's successor, Palmetto, withheld from HVHH, Inc. approximately $60,000 in Medicare billings to recoup the overpayments. According to HVHH, Inc. and Turner, Palmetto's action rendered HVHH, Inc. financially incapable of survival, which in turn caused HVHH, Inc. to discontinue business operations as of March 8, 1998. [Doc. 1 at 1-3].

When BCBS-NM denied responsibility for its error, HVHH, Inc. and Turner sought relief in the form of a favorable determination from the Provider Reimbursement Review

---

[1] Section 1395oo(f) states, in pertinent part, that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." 42 U.S.C. § 1395oo(f).

Board.  On April 29, 2004, however, the Board rendered its decision for BCBS-NM.[2]  HVHH, Inc. and Turner then commenced this action, seeking, among other things, vacatur of the Board's decision and compensatory and punitive damages.  [See Doc. 1 at 4-5].

On January 31, 2005, Defendants collectively filed *Defendants' Motion Filed in Lieu of an Answer, to Dismiss, or, in the Alternative, for Judgment on the Merits* [Doc. 19]. Defendants contend, *inter alia*, that this action is void *ab initio* and should be dismissed because HVHH, Inc. is a corporation and therefore cannot be represented by Turner, a non-attorney.  Defendants also argue that Turner has no standing in this action because the aggrieved party is HVHH, Inc. as the actual Medicare provider.  [Doc. 20 at 1, 8-9].  In support of their position, Defendants cite D.N.M. LR-Civ. 83.7, which provides that "[a] corporation or partnership must be represented by an attorney authorized to practice before this Court."  D.N.M. LR-Civ. 83.7.

On February 14, 2005, HVHH, Inc. and Turner filed a *Motion to Amend Complaint* pursuant to Fed.R.Civ.P. 15(a), requesting that the caption of the *Complaint* be amended from "HATCH VALLEY HOME HEALTH, Inc., a New Mexico Corporation, and ANTOINETTE L. TURNER, Individually, Plaintiffs" to "ANTOINETTE L. TURNER, Individually; ANTOINETTE L. TURNER, Majority stockholder of Hatch Valley Home Health Inc.; and ANTOINETTE L. TURNER, Administrator of Hatch Valley Home Health

---

[2] According to the *Complaint*, the Board stated that "[t]he Provider in this case was unjustly prejudiced and has likely suffered financial harm as a result of errors by its initial intermediary.  While the Board would like to remedy this situation, it has not been granted authority to provide equitable relief.  The Board is compelled to find for the Intermediary."  [Doc. 1 at 4].

Agency, Plaintiffs." [compare Doc. 1 and Doc. 21]. In the motion, Turner acknowledges that the local rules mandate that a corporation be represented by an attorney. However, she submits that after multiple attempts, she has been unable to find an attorney either sufficiently versed in the specialized field of Medicare law or willing to spend the time and effort to become so versed. [Doc. 21 at 2]. Turner also challenges Defendants' argument that she lacks standing in this matter, noting that Hatch Valley Home Health Agency was established in January 1994 as a sole proprietorship owned by her and that HVHH, Inc. was not incorporated until October 1995. Upon incorporation, however, HVHH, Inc. "fully assum[ed] all assets and obligations of the sole proprietorship, Hatch Valley Health Agency . . . ." [Doc. 22 at 1-2]. In any case, Turner maintains that because the events giving rise to the instant litigation transpired between April 1994 and the present, she has legitimate standing in these proceedings as sole proprietor and administrator of Hatch Valley Home Health Agency, as well as by virtue of her position as majority shareholder in HVHH, Inc. [Doc. 22]. In response to Defendants' motion to dismiss, Turner contends that any argument that this action is void *ab initio* for lack of corporate counsel is no longer valid in light of the *Motion to Amend Complaint*. [Doc. 23 at 1, 13].

In response, Defendants ask the Court to deny the motion to amend because Turner seeks to delete HVHH, Inc. as a plaintiff and instead substitute herself when it is the interests of HVHH, Inc. as Medicare provider and not those of Turner in any capacity that are at stake here. [Doc. 24]. In reply, Turner has submitted an affidavit and supporting documentation showing, among other things, that she is the majority shareholder of HVHH, Inc., which in

4

1995 acquired the assets and liabilities of the sole proprietorship Hatch Valley Home Health Agency. [Doc. 27]. Turner also has attached a copy of the minutes of the first meeting of the directors of HVHH, Inc. Those minutes reflect that on October 21, 1995, HVHH, Inc. resolved to assume the assets and liabilities of Hatch Valley Home Health Agency. [Id., Exh. 10]. An agreement executed by HVHH, Inc. and Turner in her capacity as sole proprietor of Hatch Valley Home Health Agency confirms that HVHH, Inc. "shall assume . . . all assets and liabilities of Hatch Valley Home Health Agency, the sole proprietorship . . . ." [Id., Exh. 11].

## II. ANALYSIS

### A. The Rule of Corporate Representation

Section 1654 of the United States Code provides, in pertinent part, that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." 28 U.S.C. § 1654. Notwithstanding this provision, "the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993). The Tenth Circuit and its district courts have consistently held likewise. See, *e.g.*, Haynes v. Federal Aviation Admin., 2001 WL 468087 (10th Cir. 2001) (applying rule of corporate representation where non-attorney purporting to represent corporation sought judicial review of Federal Aviation Administration decision); In re Harrison, 185 B.R. 607, 610 (Bkrtcy.D.Kan. 1995) ("Many years ago, the Tenth Circuit declared that the rule was

well-established that a corporation can appear in a court of record only by an attorney at law."); Mid-Central/Sysco Food Servs., Inc. v. Reg'l Food Servs., Inc., 755 F.Supp. 367 (D.Kan. 1991) (refusing to allow non-attorney president of defendant corporation to appear in court on behalf of corporation); DeVilliers v. Atlas Corp., 360 F.2d 292, 294 (10th Cir. 1966) ("[A] corporation can appear in a court of record only by an attorney at law."); Flora Const. Co. v. Fireman's Fund Ins. Co., 307 F.2d 413, 414 (10th Cir. 1962) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law."), *cert. denied*, 371 U.S. 950 (1963).

The rationale behind the rule of corporate representation is that the handling of litigation by a non-lawyer tends to create burdens not only for the party he represents but for his adversaries and the court as well. Courts have explained that the lay litigant frequently brings awkwardly drafted pleadings, inarticulately presented motions, and needlessly multiplicative proceedings. Of further concern is that, in addition to lacking the professional skills of a lawyer, "the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims." Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2nd Cir. 1991) (*quoting* Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2nd Cir.1983). Moreover, as an artificial entity, "[a] corporation is 'just a complex web of contracts among managers, workers, and suppliers of equity and debt capital,' and all those interests may not be aligned with those of the lay person seeking to represent" it. Capital Group, Inc. v. Gaston & Snow, 768 F.Supp. 264, 265 (E.D.Wis. 1991) (*quoting* Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1427 (7th Cir.1985)). The rule of

corporate representation assists courts as they "strive[] to preserve the corporation as a legal entity separate from its shareholders." Hawkeye Bank and Trust, Nat. Ass'n v. Baugh, 463 N.W.2d 22, 24 (Iowa 1990).

### B. Exceptions

The general rule that a corporation must be represented in court by a duly licensed attorney is not without exceptions, though those exceptions are strictly limited. For instance, in United States v. Reeves, 431 F.2d 1187 (9th Cir. 1970), the defendant partnership's managing partner attempted to file an answer to the complaint on behalf of the partnership. The district court struck the pleading on the ground that the managing partner was not a licensed attorney. Reeves, 431 F.2d 1187, 1188 (9th Cir. 1970). Reversing and remanding, the Ninth Circuit held that applicable state partnership law provided that each partner had a specific right in partnership property. Consequently, in pleading the partnership's defense against the foreclosure of real estate in which the partnership claimed an interest, the managing partner, as a member of that partnership, was pleading his own case. Id. This holding, however, has been criticized,[3] and the Ninth Circuit has recognized Rowland's

---

[3] See State of New Hampshire v. Settle, 523 A.2d 124 (1987), in which then-Judge David H. Souter rejected the reasoning of the Reeves Court:

> [T]he Ninth Circuit construed the provision of 28 U.S.C. § 1654, allowing personal appearance by a party, to permit a lay partner to appear on behalf of a partnership. Although the [C]ourt reasoned that in representing the partnership he was representing his own interest this begs the relevant question, which is whether the partner was representing any one else at the same time. Because he was necessarily representing the other partners as well, the Reeves [C]ourt was mistaken in its implicit conclusion that the one

7

overruling of it. See In re America West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994) ("[T]o the extent that Reeves stood for the proposition that non-attorney members of a partnership could appear on behalf of the partnership, the Supreme Court in California Men's Colony has overruled that holding.").

In Matter of Holliday's Tax Servs., Inc., 417 F.Supp. 182 (D.C.N.Y. 1976), Coniel L. Holliday, the sole shareholder of a small closely held corporation, was allowed to appear both on his own behalf and on behalf of his corporation in bankruptcy proceedings because neither he nor the corporation could afford an attorney. Matter of Holliday's, 417 F.Supp. at 183, *aff'd sub nom*. Holliday's Tax Servs., Inc. v. Hauptman, 614 F.2d 1287 (Table) (2nd Cir. 1979).[4] Invoking "the inherent power of a court to supervise the proper administration of justice[,]" the court held that "[t]he traditional rule [of corporate representation] is unnecessarily harsh and unrealistic when applied *in bankruptcy* to small, closely[]held corporations." Id. at 184 (emphasis added). The court explained its reasoning:

> [Small closely held corporations] are set up by the thousands. Many, such as the one before us, are in the name of the person doing business. In these instances, incorporation is merely a technicality, facilitating competitive economic activity by individuals. Failure of the "corporation" is, for all practical

---

partner's appearance effected nothing more than personal representation. Reeves was an analytical sport, without persuasive claim to be followed.

State of New Hampshire v. Settle, 523 A.2d 124, 129 (1987).

[4] But see In re Bijan-Sara Corp., 203 B.R. 358 (B.A.P. 2nd Cir. 1996) and In re St. Stephen's 350 East 116th St., 313 B.R. 161, 166 n.4 (Bkrtcy. S.D.N.Y. 2004) (both cases calling Matter of Holliday's an "aberrant case[]").

8

> purposes, the failure of the individual entrepreneur.
> Accordingly, relief available *in the bankruptcy court* should be
> cut off only for the most pressing reasons.

Id. (emphasis added). While Matter of Holliday's bears some resemblance to the instant action inasmuch as both involve small closely held corporations, they differ in that the instant action does not involve bankruptcy proceedings. Moreover, unlike Coniel Holliday, Turner does not allege that she is the sole shareholder of HVHH, Inc. [See Doc. 22 at 2 ("Turner has legitimate standing . . . as majority stockholder of Hatch Valley Home Health, Inc.") and Doc. 27, Attached March 14, 2005 Affidavit of Antoinette L. Turner ("On October 11, 1995, Hatch Valley Home Health, Inc. was incorporated . . . and under Shareholders' Agreement, Antoinette L. Turner received 60% of the issued stock of the corporation."). Finally, Turner does not allege that HVHH, Inc. cannot afford counsel but, instead, that she has been unable to locate an attorney willing or able to prosecute this matter. [See Doc. 21 at 2]. Because the instant situation does not fall within the limited exceptions to the rule of corporate representation, HVHH, Inc. may not proceed in this matter represented by Turner, a non-attorney.

### C. *Pro se* Representation of Sole Proprietorship

By amending the caption of the *Complaint*, Turner hopes to create standing by removing HVHH, Inc. as a party and substituting herself individually on the basis of her once role as owner of Hatch Valley Home Health Agency, a sole proprietorship created in 1994. [See Doc. 22]. In contrast to the general rule that only a licensed attorney may represent a corporation, courts have held that one need not be an attorney to represent a sole

9

proprietorship. To the contrary, an individual may represent a sole proprietorship "for a sole proprietorship and its owner are essentially one and the same." Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D.Ala. 1999); see also Harrison, 185 B.R. 607 at 610 (explaining that both case law and statutory authority prevented court from allowing creditor to represent collection agency in bankruptcy proceedings "unless it [was] his sole proprietorship, and not a corporation, partnership, or other separate entity.").

In Lowery, the court was persuaded that the entity in question had never been incorporated and, thus, its owner could properly represent it even though he was not an attorney. Lowery, 188 F.R.D. at 653. In the instant action, however, plentiful evidence supports the conclusion that Hatch Valley Home Health Agency, created as a sole proprietorship in 1994, was incorporated as HVHH, Inc. in 1995, and that upon incorporation HVHH, Inc. "fully assum[ed] all assets and obligations of the sole proprietorship, Hatch Valley Home Health Agency." [Doc. 22 at 1-2; see also Doc. 27, March 14, 2005 Affidavit of Antoinette L. Turner ("On October 11, 1995, Hatch Valley Home Health, Inc. was incorporated under the laws of the State of New Mexico . . . ."), Exh. 8 (Certificate of Incorporation of Hatch Valley Home Health, Inc.), Exh. 9 (Hatch Valley Home Health, Inc. Shareholders' Agreement), Exh. 10 (Oct. 21, 1995 minutes of first meeting of HVHH, Inc.'s directors (resolving, among other things, to [a]ssum[e] . . . assets and liabilities of Hatch Valley Home Health Agency")), Exh. 11 (Oct. 21, 1995 Agreement between Hatch Valley Home Health Agency and HVHH, Inc. reflecting HVHH, Inc.'s assumption of Hatch Valley Home Health Agency's assets and liabilities). "Where an

unincorporated business subsequently incorporates, the situation is analogous to a corporate consolidation or merger." 6 FLETCHER, WILLIAM MEADE ET. AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 2573 (rev. vol. 2005). The result of a corporate consolidation or merger is that "one of the constituent corporations remains in existence, absorbing in itself all the other constituent corporations which cease to exist as separate corporate entities." Id. § 7082. Applying this reasoning to the instant situation leads to the conclusion that Hatch Valley Home Health Agency, the sole proprietorship, ceased to exist when HVHH, Inc. was incorporated and "fully assum[ed] all assets and obligations of the sole proprietorship, Hatch Valley Home Health Agency." [Doc. 22 at 1-2]. Consequently, the argument that Turner's position as sole proprietor of Hatch Valley Home Health Agency gives her standing in these proceedings must fail.

## **III. CONCLUSION**

It is undisputed that Turner is aware of the requirement that a corporation be represented by counsel in this Court. [See Doc. 22 at 1 ("Plaintiffs are fully aware of the requirements of Rule 83.7 . . . and have made a continuing diligent effort to obtain the services of a qualified attorney . . . .")]. Turner attempted to cure the failure to secure corporate counsel by amending the caption of the complaint to remove the allegedly injured corporate party as a plaintiff and substitute herself. For the reasons set forth above, however, Turner cannot amend the complaint in this manner and her motion to amend must be denied. Still, in light of the strong policy favoring the adjudication of cases on their merits and the fact that it would not have been obvious to Turner as a layperson that her attempted

11

substitution of party plaintiffs would not solve the problem, the Court will permit HVHH, Inc. an additional 20 days from the date of entry of this *Memorandum Opinion and Order* to file an amended complaint signed by counsel.  Failure to comply will result in the dismissal of this action.   See Operating Eng'rs Local 139 Health Benefit Fund v. Rawson Plumbing, Inc., 130 F.Supp.2d 1022 (E.D.Wis. 2001) ("Given the significance of . . . dismissal, a corporation attempting to proceed *pro se* must be provided notice that it is required to appear by counsel . . . .").

**IT IS, THEREFORE, ORDERED** that the *Motion to Amend Complaint* [Doc. 21] is DENIED;

**IT IS FURTHER ORDERED** that HVHH, Inc. shall have 20 days from the date of entry of this *Memorandum Opinion and Order* to file an amended *Complaint* signed by counsel.

**SO ORDERED** this 4th day of April, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge